[No. B225165. Second Dist., Div. Six. Jan. 26, 2011.]

MEGAN KUCKER et al., as Trustees, etc., Plaintiffs and Appellants, v. MEGAN KUCKER, Respondent.

**COUNSEL**

Ferguson Case Orr Paterson, Robert B. England, Sandra M. Robertson and David Shea for Plaintiffs and Appellants.

No appearance for Respondent.

## Opinion

**YEGAN, J.**—Megan Kucker and Bonnie Alexander are successor trustees of the Mona S. Berkowitz Trust (the Trust). They filed a petition to confirm that shares of stock were an asset of the Trust. (Prob. Code, § 850, subd. (a)(3)(B); see also *Estate of Heggstad* (1993) 16 Cal.App.4th 943 [20 Cal.Rptr.2d 433].)[1] The shares had been owned by the deceased trustor, Mona S. Berkowitz (Trustor). Appellants appeal from the probate court's order denying their petition. The probate court erroneously concluded that the Trustor's general assignment to the Trust of her personal property was ineffective to transfer the shares of stock to the Trust. We reverse.

### Background

On June 29, 2009, at the age of 84 years, Trustor signed a declaration creating a revocable inter vivos trust. On the same date, Trustor signed a general property assignment (the General Assignment) stating, "I . . . hereby assign, transfer and convey to Mona S. Berkowitz, Trustee of the [the Trust], all of my right, title and interest in all property owned by me, both real and personal and wherever located." Trustor also signed a pour-over will leaving her entire probate estate to the Trust.

On October 29, 2009, Trustor signed an amendment and restatement of the Trust. On the same date, Trustor signed an assignment transferring to the Trust all of her shares of stock in 11 specified corporations and funds. The amendment and restatement designates appellants, Trustor's daughter and niece, as successor trustees upon the death of Trustor.

Trustor died in November of 2009. In February 2010, appellants filed a petition to confirm that 3,017 shares of stock in Medco Health Solutions, Inc. (Medco), were an asset of the Trust. Medco was not mentioned in the assignment of stock signed by the Trustor on October 29, 2009. Appellants declared that the Medco shares "were not held in the Trust's brokerage account at the time of the Trustor's death." Appellants further declared that the stock certificate for the Medco shares had been lost and that the shares had a market value in excess of $100,000. Appellants contended that, based on the General Assignment, "it was the intent of the Trustor that all stock owned by the Trustor, including the Lost Certificate Shares, be part of the Trust Estate of the Trust." The record on appeal does not include any opposition to appellants' petition, and we assume that none was filed.

The probate court conducted a hearing on the petition. The record does not include a reporter's transcript of the hearing. In its written ruling, the probate

---

[1] All statutory references are to the Probate Code unless otherwise stated.

court stated: "During oral argument . . . , counsel suggested that Probate Code section 15200 et seq. and 15207 [oral trust in personal property], in particular, provided a basis for granting the petition for order confirming assets in the trust estate. The Court has reviewed these code sections. The Court agrees that an oral trust can be created for personal property. If clear and convincing evidence is presented, the Court may conclude that an oral trust has been created. [¶] However, the Court believes that Probate Code section 15207 must be read in conjunction with Civil Code section 1624(a)(7). In those instances where the settler intends to transfer assets in excess of $100,000, a writing specifically describing the property is required. Accordingly, the petition confirming assets in the trust is denied."

## Standard of Review

"The [probate] court's construction of the Probate Code is subject to our de novo review. [Citation.]" (*Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1124 [116 Cal.Rptr.3d 315].) Because there is no conflicting extrinsic evidence as to the Trustor's intent, we independently review the written instruments at issue. (*Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 73 [70 Cal.Rptr.2d 887].) Since appellants have not provided a reporter's transcript of the hearing on the petition, "we must treat this as an appeal 'on the judgment roll.' [Citations.] Therefore, . . . [o]ur review is limited to determining whether any error 'appears on the face of the record.' [Citations.]" (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324–325 [100 Cal.Rptr.3d 335].)[2]

## Discussion

The probate court's reliance upon Civil Code section 1624, subdivision (a)(7), is misplaced. This section provides: "(a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] . . . [¶] (7) A contract, promise, undertaking, or commitment to loan money or to grant or extend credit, in an amount greater than one hundred thousand dollars ($100,000), not primarily for personal, family, or household purposes, made by a person engaged in the business of lending or arranging for the lending of money or extending credit. For purposes of this section, a contract, promise, undertaking or commitment to loan money secured solely by residential property consisting of one to four dwelling units shall be deemed to be for personal, family, or household purposes." The probate court's

---

[2] No respondent's brief has been filed. "[W]e do *not* treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error) but examine the record, [appellants'] brief, and any oral argument by appellant[s] to see if [they] support[] any claims of error made by the appellant[s]. [Citations.]" (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1 [23 Cal.Rptr.3d 273].)

construction of this section is an error that " 'appears on the face of the record.' " (*Nielson v. Gibson, supra*, 178 Cal.App.4th at pp. 324–325.)

■ " 'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citation.] 'In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.' [Citation.]" (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].)

■ Civil Code section 1624, subdivision (a)(7), cannot be construed as applying to the transfer of shares of stock to a trust. The plain meaning of the words of the statute manifests a legislative intent to limit the statute's application to agreements to loan money or extend credit made by persons in the business of loaning money or extending credit.

The probate court's error in construing Civil Code section 1624, subdivision (a)(7), does not mean that appellants' requested relief on appeal must be granted. Appellants request that "the determination of the [probate] court . . . be reversed, and a determination made that the Medco Stock was effectively transferred by the General Assignment to the Trust prior to the death of the Trustor." The probate court impliedly concluded that, irrespective of Civil Code section 1624, subdivision (a)(7), the General Assignment was ineffective to transfer the Medco stock to the Trust. Otherwise, in its ruling the court would not have made the following reference to an oral trust: "The Court agrees that an oral trust can be created for personal property. If clear and convincing evidence is presented, the Court may conclude that an oral trust has been created."[3]

■ The probate court erred by not ruling that the General Assignment was effective to transfer the Medco shares to the Trust. In construing the General Assignment, we must implement the Trustor's intent. (*Ike v. Doolittle, supra*, 61 Cal.App.4th at p. 73.) The General Assignment and pour-over will show that the Trustor intended to transfer all of her personal property to the Trust. The Trustor's omission of the Medco shares in the subsequent assignment of October 29, 2009, was an oversight caused by the misplaced stock

---

[3] Section 15207 provides for the creation of an oral trust in personal property. "Under section 15207, '[t]he existence and terms of an oral trust of personal property may be established only by clear and convincing evidence.' (§ 15207, subd. (a).) 'The oral declaration of the settlor, standing alone, is not sufficient evidence of the creation of a trust of personal property.' (§ 15207, subd. (b).) According to the California Law Revision Commission comment of section 15207, subdivision (b), 'delivery of personal property to another person accompanied by an oral declaration by the transferor that the transferee holds it in trust for a beneficiary creates a valid oral trust.' [Citation.]" (*Estate of Gardner* (2010) 187 Cal.App.4th 543, 552 [114 Cal.Rptr.3d 16].)

certificate. Appellants declared that the subsequent assignment provided "for the transfer of shares of stock for which certificates had been located."

The General Assignment was ineffective to transfer the Trustor's real property to the Trust. To satisfy the statute of frauds, the General Assignment was required to describe the real property so that it could be identified. (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 772 [55 Cal.Rptr.3d 116, 152 P.3d 420]; *King v. Stanley* (1948) 32 Cal.2d 584, 589 [197 P.2d 321], disapproved on other grounds in *Patel v. Liebermensch* (2008) 45 Cal.4th 344, 351, fn. 4 [86 Cal.Rptr.3d 366, 197 P.3d 177]; *Osswald v. Anderson* (1996) 49 Cal.App.4th 812, 818 [57 Cal.Rptr.2d 23].) But the issue here concerns the Trustor's transfer of shares of stock, not real property. The statute of frauds does not apply to such a transfer. (Civ. Code, § 1624.) There is no California authority invalidating a transfer of shares of stock to a trust because a general assignment of personal property did not identify the shares. Nor should there be.

The practice guide, Drafting California Revocable Trusts (Cont.Ed.Bar 4th ed. & Sept. 2009 Supp.; hereafter practice guide), supports our conclusion that it was unnecessary for the General Assignment to identify the Medco stock. The practice guide says that such a general assignment of personal property is a commonly used estate planning tool: "Some practitioners have clients periodically assign all (or substantially all . . .) assets to the trust so that a *Heggstad* petition (Prob C § 850(a)(3)) can be used to capture any overlooked items." (*Id.*, § 21.15, p. 845, citation omitted.) A form provided by the practice guide "for use when the client has assumed full responsibility for funding the trust . . . can be modified to advise the client to return periodically to execute a general assignment of all or substantially all of their assets to the trust so that a *Heggstad* petition (Prob C § 850(a)(3)) can be used to capture any later acquired items not titled in the name of the trust." (*Id.*, § 21.5, p. 837.)

█ In *Estate of Heggstad, supra*, 16 Cal.App.4th 943, the settlor stated in writing that real property was transferred to himself as trustee, but he never signed a deed. After the settlor's death, the appellate court affirmed an order declaring that the real property was an asset of the trust. In concluding "that a transfer of title is not necessary when the settlor declares himself trustee in his own property," the court relied in part upon an earlier edition of the practice guide. (*Id.*, at p. 950.) The court noted: "While practice guides are not compelling authority, they are persuasive when there is an absence of precedent. . . . 'Textbooks dealing with specialized areas of the law, and works on practice, are persuasive indications of what the prevailing law may be.' (Witkin, Manual on Appellate Court Opinions (1977) § 69, p. 114.)" (*Id.*, at p. 950, fn. 8.) █ The *Heggstad* court also stated that the probate

court's jurisdiction over trusts includes the "court's inherent power to decide all incidental issues necessary to carry out its express powers to supervise the administration of the trust." (*Id.*, at p. 951.) This power includes the power to add shares of stock to the trust that were omitted because the shares were misplaced.

## *Disposition*

The order denying appellants' petition to confirm 3,017 shares of Medco stock as an asset of the Trust is reversed. The matter is remanded to the probate court with directions to enter a new order granting the petition. The parties shall bear their own costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.